# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED CENTRAL BANK**
        **Plaintiff,**

   v.                                     Case No. 10-CV-00464

**MAPLE COURT LLC, et al.,**
        **Defendants**

## DECISION AND ORDER

In this diversity case, plaintiff United Central Bank ("UCB") seeks to enforce a promissory note and foreclose on a mortgage on three apartment buildings. UCB names several defendants, but only three are actively defending this suit. They are Maple Court, LLC and 2905 Wisconsin, LLC ("the LLCs"), and James Crosbie, the sole member of the LLCs.[1] Before me is UCB's motion for summary judgment on its claims and on the counterclaims filed by defendants. UCB also moves for sanctions under Fed. R. Civ. P. 11 and for default judgment against the non-appearing defendants.

## I. BACKGROUND

On November 4, 2005, Mutual Bank in Harvey, Illinois made a loan to the LLCs. This loan was evidenced by a promissory note ("the Note") in the amount of $3,225,000, which provided that the LLCs were to make principal and accrued interest payments of $24,058.81 on the fourth day of each month beginning December 4, 2005. The Note was scheduled to mature on November 4, 2010. The LLCs own three apartment buildings in

---

[1] Unless otherwise indicated, when I refer to "defendants," I mean these three parties.

Milwaukee located respectively at 2625 and 2635 West Juneau Avenue and 2904 West Wisconsin Avenue. To secure the loan, they executed a Mortgage, Security Agreement and Fixture Filing ("the Mortgage") for these properties, an Assignment of Rents and Leases, and a Security Agreement for all goods acquired for use in connection with the properties. Crosbie and another defendant, Brendan Sullivan, also executed a Guaranty promising full and prompt payment of all indebtedness under the Note.

The Mortgage required the LLCs to pay and discharge all of the taxes on the properties, including all real and personal property taxes. It gave Mutual Bank the right to require the LLCs to make payments into an escrow account sufficient to timely pay these taxes, but stated that the bank was not obligated to use the escrowed funds to pay the taxes and that the LLCs remained at all times "primarily responsible for making all such payments." (Compl. Exh. 3, § 2.05, ECF No. 1.) Mutual Bank set the LLCs' escrow payments at $12,699.40 per month. This brought the total amount due each month to $36,758.21.

From the beginning, the LLCs had trouble making timely payments. Mutual Bank agreed to execute an amendment to the Note on December 27, 2006 that waived the escrow payments and allowed the LLCs to make interest only payments on the loan from September 4, 2006 through March 4, 2007, but the amendment did not solve the LLCs'

2

problems.[2] They continued making late payments and by September 4, 2008 they were over a month behind. After that, they made the following payments:[3]

| Month | Date Payment Submitted | Check Number | Payment Amount | Notes |
|---|---|---|---|---|
| September 2008 | September 28, 2008 | 1074 | $30,000.00 | Payment for August 4, 2008 |
| October 2008 | October 29, 2008 | 1096 | $30,000.00 | Check returned for insufficient funds |
| November 2008 | November 10, 2008 | 1106 | $1,760.00 | Partial payment for September 4, 2008 |
|  | November 17, 2008 | 1118 | $30,000.00 | Remainder of payment for September 4, 2008 |
| December 2008 | December 4, 2008 | 12351 | $31,760.00 | Payment for October 4, 2008 |
|  | December 4, 2008 |  | $24,058.81 | Payment for November 4, 2008 (paid with escrow payments from August–October 2008, which Mutual Bank agreed to waive) |

---

[2] The parties also discussed a second period of interest only payments from October 4, 2007 to March 4, 2008, but these discussions never resulted in an executed agreement. (See Defs.' Response to UCB's Proposed Findings of Fact ¶ 10, ECF No. 194 (noting that this proposed finding of fact by UCB is "undisputed").)

[3] The parties debate how many payments were made and when. I take the evidence in the light most favorable to defendants as the non-moving party. The relevant evidence is found in the first three affidavits from Michael Casey, a UCB employee, the bank records attached to those affidavits, defendants' response to UCB's proposed findings of fact, and the table of payments attached to Crosbie's second affidavit. (First Aff. of Michael Casey, ECF No. 101; Second Aff. of Michael Casey, ECF No. 134; Third Aff. of Michael Casey, ECF No. 150; Second Aff. of James Crosbie, Exh. 1, ECF No. 171-6; Defs.' Response to UCB's Proposed Findings of Fact ¶ 11, ECF No. 194.)

3

|  | December 29, 2008 | 1139 | $31,760.00 | Check returned for insufficient funds |
| --- | --- | --- | --- | --- |
| January 2009 |  |  |  | No payment received |
| February 2009 | February 2, 2009 | 12380 | $31,760.00 | Payment for December 4, 2008 |
|  | February 25, 2009 | 5024 | $31,760.00 | Payment for January 4, 2009 |
| March 2009 | March 28, 2009 | 5056 | $31,760.00 | Payment for February 4, 2009 |
| April 2009 | April 30, 2009 | 5079 | $31,760.00 | Check returned for insufficient funds |
| May 2009 | May 11, 2009 | 5090 | $31,760.00 | Payment for March 4, 2009 |
|  | May 29, 2009 | 10002 | $31,760.00 | Payment for April 4, 2009 |
| June 2009 | June 30, 2009 | 10004 | $31,760.00 | Payment for May 4, 2009 |
| July 2009 |  |  |  | No payment received |

In addition to being late, all of these payments appear to be insufficient because they are all less than $36,758.21. However, the record shows that a Mutual Bank employee told Crosbie via email on November 4, 2008 that the LLCs could reduce their escrow payments to $7,700 per month starting with the August 2008 payment. This would make the total amount due from that point forward $31,758.81 per month. The email also stated that Mutual Bank would waive the escrow payments for August through October 2008 and use the money saved to cover the November 2008 payment on the Note. For several reasons, this email was likely insufficient to amend the terms of the Note and Mortgage. (See Compl. Exh. 1 § 23(C) ("The provisions contained in this Note may not be amended,

except through a written amendment which is signed by the Borrower and Bank."); Compl. Exh. 3 § 8.08 ("This Mortgage cannot be altered, amended, modified, terminated or discharged except in a writing signed by Mortgagor and Mortgagee.").) But for present purposes I will assume that it was sufficient because, even with these accommodations, the LLCs were still behind on their payments by the end of January 2009.

On January 31, 2009, Mutual Bank placed the loan on non-accrual status, which means it started attributing all payments on the loan to principal. Federal banking regulations require loans to be placed on non-accrual status where payment in full of principal and interest is not expected or the loan is 90 days past due. See 12 C.F.R. §§ 621.6(a), 621.8(a). This change in the loan's status did not affect the terms of the Note. It simply means that the bank stopped reporting interest as earned income until the doubts about the loan's collectibility could be removed. See 12 C.F.R. § 621.9. Mutual Bank did not inform the borrowers that the loan was on non-accrual status, but its records indicate that it sent the LLCs a demand letter on February 3, 2009 notifying them that they were in default and giving them ten days to cure by making all past due payments. The LLCs deny receiving this letter.

In January 2009, Mutual Bank also stopped paying the LLCs' real estate taxes. The bank had paid the taxes for 2007, which were due in installments in 2008, but after it paid those taxes there was only $865.09 left in the escrow account. This was not enough to pay the first installment of 2008 taxes due on January 31, 2009.[4] In the November 2008 email,

---

[4] The record does not say how much the LLCs owed on January 31, 2009, but the first installment of taxes for 2007 was $28,555.76, and the total owed for that year was $69,631.69. (Second Crosbie Aff. Exh. 4, ECF No. 171-9 (email from Mutual Bank to Crosbie discussing real estate taxes with attached spreadsheet).)

5

Mutual Bank had warned the LLCs that this would be the case and informed them that it would only be able to continue paying their taxes if they made all of their payments in 2009 on time. (See Second Crosbie Aff. Exh. 4 ("As you will see we will not have enough to make the 1st installment due 01/31/09; however will [sic] collect enough money through the year to pay taxes and get very close to collecting enough to make the 1st installment in 2010.").) When the LLCs again fell behind, the bank stopped reserving money for escrow and started applying all of the LLCs' payments to the outstanding balance on the Note. As a result, the bank did not have enough money in the escrow account to make any more tax payments. Since the LLCs did not make any tax payments either, the taxes for 2008 and 2009 went unpaid.[5]

On July 31, 2009, regulators closed Mutual Bank, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. On the same day, the FDIC entered into a Purchase and Assumption Agreement with UCB under which the FDIC sold most of Mutual Bank's assets to UCB, including the Note and related security agreements. The FDIC then delivered the Note and related agreements to UCB. After that, the LLCs made no more escrow payments and fell even further behind on their payments under the Note. (See Defs.' Statement of Add'l Facts ¶ 33 (conceding that the LLCs only made six escrow payments in 2009).) By April 2010, they were at least four months behind on their payments. On April 21, 2010, UCB sent the LLCs a letter advising them that the loan was

---

[5] Defendants attempt to prove that Mutual Bank paid the LLCs' 2008 taxes by submitting a copy of a letter from Mutual Bank dated March 5, 2009, which states that the bank paid "$99,513.45 for 2008 taxes." (Aff. of Karen Stuckey, Exh. 11, ECF No. 171-16.) However, this letter refers to the taxes for 2007 which were paid in 2008.

6

in default and demanding payment of the full principal and all accrued interest by May 1, 2010.[6] When defendants failed to pay, UCB commenced this action.

## II. DISCUSSION

UCB moves for summary judgment on the four claims listed in the complaint. Count I seeks foreclosure on the Mortgage. Count II seeks replevin of any personal property pursuant to the Security Agreement. Count III seeks damages against the LLCs for breach of the Note, and Count IV seeks damages against Crosbie and Sullivan for breach of the Guaranty. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering UCB's motion for summary judgment, I view the evidence in the light most favorable to the defendants as the non-moving party and may grant the motion only if no reasonable juror could find for them. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248, 255 (1986).

The first question is whether UCB had standing to bring this action. Defendants argue that it did not because UCB did not have the right to enforce the Note and foreclose on the Mortgage at the time it filed its complaint. I disagree. The Note is governed by Illinois law. (See Compl. Exh. 1, § 23(F) ("This Note shall be governed by the laws of the State of Illinois, provided that such laws are not otherwise preempted by federal laws and regulations.").) Under Illinois law, the person in possession of a promissory note who is

---

[6] In their response to UCB's proposed findings of fact, defendants contend that this letter was actually sent to the LLCs' tenants and not to the LLCs' business office, but they offer no citation to the record to support this contention. Therefore, I treat the finding of fact as undisputed. (See also Defs.' Add'l Proposed Findings of Fact ¶ 29, ECF No. 195 ("Crosbie's first notice that UCB declared default on the loan was on April 21, 2010.").)

7

designated as the payee therein is the "holder" of the note and has the right to enforce payment on it. 810 Ill. Comp. Stat. 5/3-109(b). The holder can give someone else the right to enforce the note by transferring it. 810 Ill. Comp. Stat. 5/3-203(b). A transfer occurs when a note is delivered to a person with the intention of giving the recipient the right to enforce it. Id. 5/3-203(a); see also 810 Ill. Comp. Stat. 5/33-301.

Here, Mutual Bank was the holder of the Note, and the FDIC, acting as Mutual Bank's receiver, transferred it to UCB by delivering it to UCB and executing the Purchase and Assumption Agreement. This agreement states that the FDIC "hereby sells, assigns, transfers, conveys and delivers to [UCB], all right, title, and interest of the [FDIC] in and to all of the assets . . . of [Mutual Bank]." (Second Casey Aff. Exh. F § 3.1; see also Second Casey Aff. Exh. G, Schedule 4.15B (expressly noting that the Note and related security agreements are included in the transferred assets).) This transfer took place on July 31, 2009, almost a year before UCB filed this lawsuit. Thus, UCB had the right to enforce the Note. UCB also had the right to foreclose on the Mortgage, which is governed by Wisconsin law. (See Compl. Exh. 3, § 8.06 ("This Mortgage shall be governed by and construed and enforced in accordance with the laws . . . of the State in which the Premises is located.").) Under Wisconsin law, a party has the right to foreclose on a mortgage if it owns the mortgage and has the right to enforce payment of the underlying debt. See Mitchell Bank v. Schanke, 268 Wis. 2d 571, 594 (2004).

The next question is whether there was a default under the Note and Mortgage. To answer this question, I must interpret the contracts using state law. Under Illinois law, a court determines the parties' intent by giving the words used in the contract their plain and

8

ordinary meaning. Village of Arlington Heights v. Anderson, 963 N.E.2d 949, 956 (Ill. Ct. App. 2011). If the language is clear, the construction of the contract presents a question of law. Id. The basic principles of contract interpretation are the same in Wisconsin. See Town Bank v. City Real Estate Dev., LLC, 330 Wis. 2d 340, 356 (2010).

The Note states that an "Event of Default" occurs when the LLCs fail to pay any amount due under it and fail "to cure such non-payment within ten (10) days after the Bank's notice to Borrower that payment has not been received." (Compl. Exh. 1 § 7(A).) The evidence shows that the LLCs were behind on their payments by January 2009, so the parties spend a lot of time debating whether the LLCs received the February 3, 2009 letter notifying them of their default and giving them ten days to cure. I need not resolve this debate because the Note states that an Event of Default also occurs if the LLCs fail "to pay or provide proof of payment of any tax . . . on or before its due date." (Compl. Exh. 1, § 7(F).) Thus, the LLCs' failure to pay their 2008 and 2009 real estate taxes was sufficient to trigger an Event of Default under the Note.

Defendants argue that Mutual Bank, and UCB as its successor, was obligated to pay the taxes for the LLCs, but this argument is contradicted by the Mortgage which expressly states that the bank is not required to use the escrowed funds to pay the LLCs' taxes. Defendants repeatedly claim that there was a separate escrow agreement that required the bank to pay their taxes. However, they do not offer any proof of such an agreement.[7] In any event, the bank could not pay the LLCs' taxes because there was not enough money in the escrow account. Defendants argue that this was because Mutual

---

[7] They cite to Exhibit 9 at Docket #171-14, but this exhibit does not contain an escrow agreement.

9

Bank illegally "raided" the escrow account, but UCB points out that § 12 of the Note gives the bank the right to set-off "any or all of the outstanding Principal and accrued interest . . . against any obligation Bank may have, now or hereafter, to pay money, securities or other property to [the LLCs]." (See Compl. Exh. 1, § 12.) UCB claims this provision gave Mutual Bank the right to use all funds held in connection with the loan, including the escrow funds, to cover past due payments under the Note. (See also Compl. Exh. 1, § 17 (noting that payments under the Note are secured by the "Non Interest Bearing Real Estate Escrow Account").) Defendants offer no response to this argument. Therefore, I conclude that Mutual Bank had the right to take the escrow funds.

      Defendants also argue that Mutual Bank breached the loan documents because it did not notify the LLCs that it was not going to pay their 2008 and 2009 taxes. They do not, however, point to any provision in either the Note or Mortgage that requires such notice. Therefore, I conclude that none was required. (See also Compl. Exh. 1, § 12 (noting that the bank can exercise its right to set-off "without prior demand or notice").) In any case, Mutual Bank warned the LLCs in November 2008 that the bank would only be able to continue paying their taxes if they made all of their 2009 payments on time. The LLCs did not meet this obligation. Thus, it should have been obvious to them that the bank would be unable to pay their taxes. This fact should have become even clearer to them in July 2009 when they stopped making escrow payments altogether.[8]

---

[8] Defendants argue somewhat unclearly that the LLCs stopped making escrow payments because Tom Le, a UCB employee, said they did not have to make them. Even assuming that Le made this statement and that the statement was binding on the bank, the LLCs knew that without escrow payments the bank could not pay their taxes and that they were responsible for paying them.

If an Event of Default occurs, the bank has the right to accelerate the payments due under the Note. (Compl. Exh. 1, § 10.) UCB exercised this right when it sent the LLCs the April 21, 2010 letter which demanded full payment on the Note within ten days. The LLCs failure to pay in response to this letter also caused a default under the Mortgage. The Mortgage states that an "Event of Default" occurs when the LLCs fail to pay when due "any installment of the principal or interest payable under the Note" and fail "to cure such non-payment within ten (10) days after [the bank's] notice to [the LLCs] that payment has not been received." (Id. Exh. 3, § 5.02.) An Event of Default under the Mortgage gives the bank the right to foreclose on the Mortgage and enforce all of the other security agreements. (Id. § 5.01.) Because defendants defaulted under both the Note and the Mortgage, I will grant UCB's motion for summary judgment on the claims in the complaint.

Along with their answer, defendants filed a class action counterclaim with seven counts, and UCB also moves for summary judgment on the counterclaim. Defendants have not moved for class certification, and they do not mention Counts VI and VII of the counterclaim in their brief. Therefore, I will only address Counts I–V and I will treat them as individual claims.

Count I of the counterclaim seeks damages for breach of the loan documents. The counterclaim lists several possible contract breaches, but defendants only make three arguments in their brief. First, they argue Mutual Bank breached the loan documents by attributing all of the LLCs' payments after January 31, 2009 to principal. Defendants claim this action violated § 18 of the Note, which requires all payments to be applied "first to costs, then to accrued interest and the balance, if any, to Principal except as otherwise required by law." (Compl. Exh. 1, § 18.) Mutual Bank did not breach this provision of the

11

contract. As noted, federal banking regulations require a bank to place a loan on non-accrual status and attribute all of the payments on it to principal if the bank does not expect full payment. See 12 C.F.R. § 621.6(a)(1). And, by the start of 2009, Mutual Bank had good reason to doubt the LLCs' ability to repay the loan. They had sought several accommodations from the bank, bounced multiple checks and consistently made late payments. Therefore, federal law required the bank to change the allocation of payments.

Second, defendants claim Mutual Bank and UCB breached the loan documents by failing to pay the real estate taxes for 2008 and 2009. As discussed, the loan documents did not require the banks to pay the LLCs' taxes. Third, defendants claim the banks breached the loan documents by declaring the loan to be in default without first giving the LLCs' notice of their default and an opportunity to cure. They point out that the Note requires notice and an opportunity to cure before there can be an Event of Default based on the LLCs' failure to make principal or interest payments. (See Compl. Exh. 1 § 7(A).) However, even if the LLCs can prove the banks failed to notify them that they had missed principal and interest payments, the banks were still entitled to declare default based on the LLCs' failure to pay their real estate taxes. The Note does not require the bank to give notice or provide an opportunity to cure such a default. (See Compl. Exh. § 7(G).) Therefore, I will grant UCB's motion for summary judgment on Count I of the counterclaim.

Count II of the counterclaim seeks damages for fraud, Count III seeks damages for misrepresentation, County IV seeks damages for conversion of the LLCs' escrow funds, and Count V seeks damages for breach of fiduciary duty. None of these claims are properly developed in defendants' brief. For example, defendants say their fraud claim is based on UCB's breach of the loan documents, but they do not explain how any of the

12

alleged breaches of contract amount to fraud under either Illinois or Wisconsin law. Therefore, I will also grant UCB's motion for summary judgment on Counts II–V of the counterclaim.

If I conclude UCB is entitled to summary judgment, defendants ask for the opportunity to conduct additional discovery. They say they need time to "receive additional documents from UCB and complete the depositions of the bank officers." (Defs.' Br. in Opposition 25, ECF No. 193.) I will deny this request because defendants have not explained what they hope to learn and why they could not complete discovery earlier. See Fed. R. Civ. P. 56(d) (allowing a court to defer ruling on a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition") (emphasis added). I have already extended the discovery deadline several times and I see no reason to further delay this case.

Since the Mortgage is governed by Wisconsin law, Chapter 846 of the Wisconsin Statutes, which deals with claims for foreclosure on real estate, governs UCB's foreclosure claim.[9] Under Chapter 846, a foreclosure action has two steps: rendering a judgment of foreclosure and sale and proceedings after the judgment. Shuput v. Lauer, 109 Wis. 2d 164, 171 (1982). I construe UCB's motion for summary judgment on Count I of the complaint as a request to enter a judgment of foreclosure and sale. The problem is that a

---

[9] Much of Chapter 846 could be described as "procedural" rather than "substantive" law, and therefore one may wonder how much of that chapter applies in a federal diversity case. See, e.g. Gacek v. Am. Airlines, Inc., 614 F.3d 298, 301–02 (7th Cir. 2010) (noting that federal rather than state "procedural" law applies in diversity cases). However, neither party argues that any provision of Chapter 846 does not apply to this case, and to my knowledge there is no well-established federal procedure governing real-estate foreclosures. Therefore, I will apply Chapter 846 to this case.

13

judgment of foreclosure and sale is a technical document that must include a number of specific findings and orders. See generally Wis. Stat. Ch. 846; see also IIA Wis. Sup. Ct. Office of Judicial Education, Wisconsin Judicial Benchbook–Civil CV 39-11 to CV 39-12 (4th Ed. 2012). UCB has not provided me with all the information I need to enter such a judgment. The missing information relates to two issues. I must state in the judgment whether the mortgaged premises can be sole in parcels, and I may not enter a judgment of foreclosure and sale until twenty days after the lis pendens has been filed. Wis. Stat. §§ 846.01, 846.10. Thus, further proceedings will be needed before judgment can be entered. UCB should submit the missing information along with a proposed judgment. The proposed judgment should contain everything required by Chapter 846 and also address UCB's claims under Counts II–IV of the complaint. I will give defendants time to respond to the proposed judgment. I will then resolve any remaining issues and enter judgment.

There are two remaining motions to address. First, UCB moves for sanctions against defendants under Rule 11. UCB argues that defendants' attorneys violated this rule by not conducting an adequate inquiry into the facts before filing the counterclaim. See Fed. R. Civ. P. 11(b)(3) (requiring an attorney to certify that all factual allegation "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). It points to four allegations in the counterclaim that it contends lack evidentiary support: 1) the LLCs performed all of their duties and obligations under the Note and Mortgage, 2) UCB failed to file the proper documentation in support of its foreclosure claim, 3) UCB failed to determine its rights and duties under the Note and Mortgage before filing this action, and 4) UCB improperly used robo-signers. Although this is a close case, I will deny the motion for sanctions. The bank

14

records in this case were somewhat disorganized because of the hand-off between Mutual Bank and UCB. As a result, it was reasonable for defendants to initially allege that the Note had been amended, that the LLCs had complied with their obligations under the amended Note, and that UCB had failed to follow the proper foreclosure procedure. It is now clear that the LLCs did not comply with all of their obligations and that UCB properly foreclosed on the Mortgage, but that does not mean the counterclaim violated Rule 11. See Fed. R. Civ. P. 11 advisory committee's note ("That summary judgment is rendered against a party does not necessarily mean, [for purposes of Rule 11], that it had no evidentiary basis for its position.").[10]

Second, UCB moves for default judgment against all of the defendants that have failed to appear in this suit. I will deny this motion with regard to Badger Commercial Sales, Inc. and Great Lakes Commercial Sales, Inc. because there is no proof of service for these defendants. I will also deny it with regard to the "unknown tenants," who have not yet been identified. The clerk has entered default against all of the other non-appearing defendants. See Fed. R. Civ. P. 55(a). However, I cannot enter default judgment against these defendants because it is not clear what UCB wants the judgment to look like. UCB asks for default judgment to be entered "consistent with the demands of plaintiff's complaint," but I am not sure what that means. (Mot. for Default J. at 3, ECF No. 98.) To the extent UCB wants me to include language in the judgment granting relief against the defaulting defendants, it may include appropriate language in its proposed judgment.

---

[10] As additional support for its motion, UCB points out that on August 24, 2012 defendants filed an affidavit from Crosbie that claimed several payments were made with checks that actually bounced, but this appears to have been an unintentional error and defendants have since filed a corrected affidavit. (See Second Crosbie Aff., Exh. 1.)

15

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that UCB's motion for summary judgment (Docket #190) is **GRANTED**. UCB shall submit the missing information identified above and a proposed judgment within **30 days** of the date of this order. If the defendants dispute the information provided by UCB or object to the form of the proposed judgment, they may file a brief explaining their position on these matter within **15 days** of the date on which UCB files the information and proposed judgment.

**IT IS FURTHER ORDERED** that UCB's motion for sanctions (Docket #168) is **DENIED**.

**IT IS FURTHER ORDERED** that UCB's motion for default judgment against the non-appearing defendants is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that UCB may include language terminating the interests of the defaulting defendants in the properties subject to the Mortgage in its proposed judgment of foreclosure and sale. In all other respects, the motion is denied.

**FINALLY, IT IS ORDERED** that a telephone status conference will be held on **September 17, 2013** at **11:00 a.m.** for the purpose of identifying any further proceedings that may be needed beyond those stated in this opinion. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge